[DO NOT PUBLISH]


IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 18-13376
Non-Argument Calendar
_____

Agency No. A209-386-785


ALICIA BERENICE TOSAR-CEDENO,
DIANA SOPHIA TOSAR-CEDENO,

Petitioners,

versus

U.S. ATTORNEY GENERAL,

Respondent.


_____

Petition for Review of a Decision of the
Board of Immigration Appeals
_____

(June 5, 2019)

Before MARCUS, ROSENBAUM, and BRANCH, Circuit Judges.

PER CURIAM:

Alicia Berenice Tosar-Cedeno, a native and citizen of Venezuela, and her daughter, Diana Sophia Tosar-Cedeno, seek review of the Board of Immigration Appeals's ("BIA") decision affirming the Immigration Judge's ("IJ") order denying Tosar-Cedeno's application for asylum and withholding of removal. Tosar-Cedeno argues that the record compels a finding that the mistreatment she suffered in Venezuela amounted to persecution, and that she suffered that mistreatment on account of her political opinion. We disagree and, accordingly, deny her petition for review.

## I.

Tosar-Cedeno and her daughter applied for admission to the United States at a port of entry on the Mexican border in August 2016. The government immediately began removal proceedings on the ground that she lacked a visa or valid entry document. She conceded that she was subject to removal and applied for asylum and withholding of removal.[1] The IJ presided over a merits hearing on her application in August 2017, at which she was represented by counsel.

At the merits hearing, Tosar-Cedeno testified that she feared returning to Venezuela because she believes that she had been harmed and would be targeted for harm in the future based on her political opinion. According to Tosar-Cedeno,

---

[1] Tosar-Cedeno also applied for relief under the Convention Against Torture, but she does not address the denial of this application in her briefing to this Court. Accordingly, we deem this issue abandoned.

2

she began participating in antigovernment political rallies in 2014. She and the company she worked for, Preincar01 ("Preincar"), offered assistance to participants in the rallies, including snacks and sometimes shelter for those who were being sought after by police. In her testimony, she described two main incidents that she believed were connected to her participation in the rallies.

The first incident occurred in February or March of 2016. Tosar-Cedeno and her baby daughter were attending a family reunion at her mother's house, when 20 "collectivos"—a group of people who, according to Tosar-Cedeno, were armed by the government and trained to harass and attack others—showed up on 10 motorcycles and began harassing her. Two collectivos disembarked and approached her on foot, while the other collectivos continued on their way. The two collectivos pushed her and grabbed her harm and tried to take her daughter from her. She was able to escape by jumping into a nearby car, and her father and brother intervened to protect her. She stated that she did not know why the collectivos tried to take her daughter, but she believed they intended to punish her for participating in antigovernment rallies.

The second incident occurred on June 28, 2016. On that day, Tosar-Cedeno and a coworker were preparing to reopen Preincar, which sold various goods, after it had been vandalized earlier in the year. Police officers arrived and asked her when Preincar's owners, who were out of the country, were going to be back. She

3

refused to provide that information, stating that the officers did not have a proper order. The officers then demanded invoices and merchandise from the store and wanted her to sign an order they would not let her read. She refused and then tried to call an attorney on the company phone, but an officer intervened and hung up the phone. She then tried to call her husband on her cell phone, but an officer grabbed her phone and arrested her. The officer put her in a car, shoving her twice along the way, and took her to jail. Meanwhile, her coworker called a company attorney.

Tosar-Cedeno was detained at the jail for around seven hours. At some point during her detention, an attorney who worked for Preincar arrived and met with the police outside of her presence. She later learned from the attorney that the police were looking for Preincar's owners because they had been identified as participants in antigovernment rallies. She explained that Preincar used to provide services to Venezuela's judiciary, so the police had access to information about its owners and employees, which it used to identify them as participants in the rallies. The police demanded a bribe of $25,000 to release her, but they eventually accepted 5 million bolivars, equivalent to about $500. Preincar paid the money, and she was released. As she was being released, one of the officers took her aside and told her to leave the country because she had become their "ATM," the

4

implication being that she could be arrested for other fictitious charges and have to pay more bribes.

Tosar-Cedeno also testified that she received threatening phone calls nearly everyday throughout 2016. The callers demanded information about Preincar's owners and threatened to kill her or hurt or take away her daughter if she did not cooperate. She believed that the police were calling her because they had asked about her detention.

Finally, Tosar-Cedeno described two other brief incidents that she thought were connected to her political activities. In April or May of 2016, she was walking on the street with her daughter and a friend when a black car "stopped abruptly." In light of the threatening phone calls she had been receiving, she was afraid that the car contained collectivos, so she started running. The car sped off. Also, just before her arrest and detention, an armed group of collectivos on motorcycles outside her home fired shots into the air, which she thought was intended to scare her.

The IJ issued an oral decision denying Tosar-Cedeno's applications for asylum and withholding of removal. Despite having "serious concerns" about her credibility, the IJ assumed that Tosar-Cedeno was credible for purposes of his decision. The IJ first found that her past experiences were not severe enough to rise to the level of persecution. Next, the IJ found that she had not established that

what she experienced was on account of her political opinion. The IJ found that the attempted kidnapping of her daughter did not have any connection to her political activities and that her arrest and detention were due to officers' attempts to find information about Preincar's owners, not her political opinion. As to the phone calls and other incidents, the IJ found that any connection to her political activities was speculative.

The BIA affirmed the IJ's decision on appeal. The BIA agreed with the IJ that Tosar-Cedeno did not experience past persecution and stated that it was not clearly erroneous for the IJ to determine that the motivation for her mistreatment was not her actual or imputed political opinion. The BIA found that the reasons for her mistreatment were "unclear and thus insufficient to satisfy the nexus requirement for asylum and withholding of removal." Tosar-Cedeno now petitions this Court for review.

## II.

We review the BIA's decision as the final judgment, unless the BIA expressly adopted the IJ's decision. *Kazemzadeh v. U.S. Att'y Gen.*, 577 F.3d 1341, 1350 (11th Cir. 2009). Where the BIA agrees with the IJ's reasoning, we will review the decisions of both the BIA and the IJ to the extent of the agreement. *Id.* Here, because the BIA agreed with the findings of the IJ and added its own observations, we review both.

We review factual findings for "substantial evidence" and conclusions of law *de novo*. *Id.* Review for substantial evidence is deferential and is based on a construction of the record evidence that is most favorable to the agency's decision. *Id.* We must affirm the agency's decision "if it is supported by reasonable, substantial, and probative evidence on the record considered as a whole." *Id.* at 1351 (quotation marks omitted). Findings of fact may be reversed only if the record compels a different result. *Id.* In other words, the mere fact that the record may support a different conclusion is not sufficient to justify reversal. *Sanchez Jimenez v. U.S. Att'y Gen.*, 492 F.3d 1223, 1230 (11th Cir. 2007).

The government has the discretion to grant asylum if the applicant establishes that she is a "refugee." 8 U.S.C. § 1158(b)(1)(A). A "refugee" is someone who is unable or unwilling to return to her country of nationality "because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." *Id.* § 1101(a)(42)(A). One of these protected grounds must be "at least one central reason" for the persecution. *Id.* § 1158(b)(1)(B)(i). Similarly, an applicant for withholding of removal must establish that her life or freedom would be threatened upon removal "because of [her] race, religion, nationality, membership in a particular social group, or political opinion." *Id.* § 1231(b)(3)(A). In other words, an applicant must establish a "nexus" between the persecution and a protected

7

ground to be eligible for asylum or withholding of removal.  We will not reverse a finding that an applicant failed to demonstrate a nexus if the finding is supported by substantial evidence.  *Rodriguez Morales v. U.S. Att'y Gen.*, 488 F.3d 884, 890 (11th Cir. 2007).

## III.

Here, substantial evidence supports the BIA and IJ's determination that Tosar-Cedeno failed to establish a nexus between her real or imputed political opinions and any past persecution or feared future persecution.[2]  With regard to the three incidents with the collectivos—attempting to kidnap her daughter, following her on the street, and shooting guns outside her house—Tosar-Cedeno's testimony did not identify with any specificity how the collectivos knew about her political activity or why they targeted her and attempted to kidnap her daughter.  Because the connection between these events and Tosar-Cedeno's political activity was largely speculative, the record does not compel a conclusion contrary to the BIA and IJ with respect to these events.  *See Sanchez Jimenez*, 492 F.3d at 1230.

With respect to her arrest and detention, substantial evidence supports the BIA and IJ's determination that Tosar-Cedeno's actual or imputed political opinion

---

[2] We need not and do not consider the BIA and IJ's determination that the incidents Tosar-Cedeno described did not rise to the level of persecution.  Even assuming that the incidents rose to the level of persecution, she still must establish a nexus to a protected ground to be eligible for asylum and withholding of removal.  Plus, the BIA and IJ did not address whether she established a well-founded fear of future persecution even if she did not suffer past persecution.

8

was not one central reason for her mistreatment.   Tosar-Cedeno's testimony indicates that the police were targeting the owners of Preincar, the business where she worked, not Tosar-Cedeno specifically.

Although the targeting of the owners was linked to their political activities, it does not necessarily follow that Tosar-Cedeno was mistreated because of *her* political activities.  *See Carrizo v. U.S. Att'y Gen.*, 652 F.3d 1326, 1331 (11th Cir. 2011) ("The ordinary meaning of the phrase 'persecution on account of . . . political opinion' in § 101(a)(42) is persecution on account of the *victim's* political opinion . . . .") (quoting *I.N.S. v. Elias-Zacarias*, 502 U.S. 478, 482 (1992)). Despite participating in antigovernment rallies since 2014, Tosar-Cedeno was not subject to any mistreatment until 2016.  And it appears that her arrest and detention may have been the product of her refusal to comply with the officers' requests for information about Preincar's owners and for merchandise or invoices.   The threatening phone calls she received likewise appear to have been linked to Preincar's owners and her refusal to cooperate.

Mistreatment based on a refusal to cooperate generally is not enough to establish the nexus requirement.  *See Sanchez v. U.S. Att'y Gen.*, 392 F.3d 434, 438 (11th Cir. 2004) ("It is not enough to show that she was or will be persecuted or tortured due to her refusal to cooperate . . . .").   Thus, while some evidence supports Tosar-Cedeno's claim that she was targeted by the police and the

collectivos because of her participation in antigovernment rallies, we cannot say that the record compels a finding contrary to that reached by the BIA and the IJ. *See Rodriquez Morales*, 488 F.3d at 891.

Because substantial evidence supports the BIA and IJ's finding that Tosar-Cedeno failed to establish a nexus between any mistreatment she suffered or feared and her political opinions, she is not eligible for either asylum or withholding of removal.  *See* 8 U.S.C. §§ 1158(b)(1)(A), 1231(b)(3)(A).  Accordingly, we deny the petition for review.

**PETITION DENIED.**